FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 28, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PATRICK JOHN PAGE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No.   2:17-CV-00067-SMJ

**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION**

Plaintiff Patrick John Page appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) benefits. He alleges that the ALJ improperly (1) failed to consider his eligibility for Listing 12.05C, (2) found his symptom testimony not credible, and (3) discounted the opinions of several medical providers. The ALJ did not find that Mr. Page's borderline IQ was a severe impairment at step two and therefore was not required to consider Listing 12.05C at step three. The ALJ gave specific reasons, supported by substantial evidence, for rejecting Page's symptom testimony and for his consideration of the medical opinions. Defendant's motion for summary judgment is therefore granted.

ORDER **-** 1

## I. BACKGROUND[1]

Patrick Page filed an application for Supplemental Security Income (SSI) on February 27, 2013, alleging disability beginning August 15, 2011. AR 205–30. His claim was denied initially and upon reconsideration. AR 149–52. Page requested a hearing on September 11, 2015, and a hearing was held on July 22, 2015. AR 170–71, 48–89. Page amended the onset date of his claim to August 15, 2012, at the hearing. AR 13, 54. The ALJ issued an unfavorable decision on August 6, 2015. AR 10–37. The Appeals Council denied Page's request for review, AR 1–7, and he timely appealed to this Court. ECF No. 1.

## II. DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER - 2

1    Step one assesses whether the claimant is engaged in substantial gainful

2    activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he

3    is not, the decision-maker proceeds to step two.

4        Step two assesses whether the claimant has a medically severe impairment

5    or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the

6    claimant does not, the disability claim is denied. If the claimant does, the evaluation

7    proceeds to the third step.

8        Step three compares the claimant's impairment with a number of listed

9    impairments acknowledged by the Commissioner to be so severe as to preclude

10   substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1,

11   416.920(d). If the impairment meets or equals one of the listed impairments, the

12   claimant is conclusively presumed to be disabled.  If the impairment does not, the

13   evaluation proceeds to the fourth step.

14       Step four assesses whether the impairment prevents the claimant from

15   performing work he has performed in the past by examining the claimant's residual

16   functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able

17   to perform his previous work, he is not disabled. If the claimant cannot perform

18   this work, the evaluation proceeds to the fifth step.

19       Step five, the final step, assesses whether the claimant can perform other

20   work in the national economy in view of his age, education, and work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).
If the claimant can, the disability claim is denied. If the claimant cannot, the
disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The
claimant has the initial burden of establishing a *prima facie* case of entitlement to
disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The
burden then shifts to the Commissioner to show 1) the claimant can perform other
substantial gainful activity, and 2) that a "significant number of jobs exist in the
national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d
1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of
such severity that he is not only unable to do his previous work but cannot,
considering his age, education, and work experiences, engage in any other
substantial gainful work which exists in the national economy. 42 U.S.C. §§
423(d)(2)(A), 1382c(a)(3)(B).

### III.    ALJ FINDINGS

At step one, the ALJ found that Page had not engaged in substantial gainful
activity since August 15, 2012. AR 15. At step two, the ALJ concluded that Page
had the following medically determinable severe impairments: degenerative disc
disease of the cervical and lumbar spine, pain disorder, depression and anxiety. *Id.*
The ALJ noted that Page had complaints of abdominal pain, COPD, and carpal

tunnel syndrome, but found that none of these conditions were severe impairments. AR 16. The ALJ also noted that Page had borderline intellectual functioning as indicated by his performance on intellectual testing (borderline range FSIQ of 73 and Verbal Comprehension of 72, AR 529–32). However, the ALJ noted that, based on the record as a whole—including, most notably, Page's history of several years performing semi-skilled work—Page's performance on the FSIQ test "is not determinative of his functional capacity, and that he has no worse than moderate limitations in that regard." AR 16.

At step three, the ALJ found that Page did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 17–18. At step four, the ALJ found that Page had the residual functional capacity to perform a full range of light work with some additional limitations. AR 18–28. In reaching this conclusion, the ALJ found that Page's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he found that some of Page's statements concerning the intensity, persistence and limiting effects were not entirely credible. AR 19–20. In determining Page's physical capacity, the ALJ gave significant weight to state agency medical consultant, Dr. Alexander. AR 25. The ALJ gave minimal weight to the opinion of DSHS consultative examining physician, Dr. Shanks. AR 25–26. In determining Page's mental functionality, the ALJ gave little weight to DSHS

consultative examining psychologist, Dr. Brown. The ALJ gave minimal weight to the opinions of Page's girlfriend. The ALJ did not consider opinions issued before the relevant period. AR 26–28.

At step five, the ALJ found that Page is unable to perform any past relevant work and that there are jobs that exist in significant numbers in the national economy that he could perform. AR 28–29.

## IV.    STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

# V. ANALYSIS

Page argues that the ALJ erred in step three by failing to consider whether he meets listing 12.05C, which addresses intellectual disability. ECF 12. He also argues that the ALJ erred in determining his residual functional capacity at step four by (1) finding his testimony not credible, and (2) improperly discounting the opinions of several medical providers. *Id.* The ALJ did not err in failing to consider Page's eligibility under listing 12.05C or in assessing Page's residual functional capacity at step four. Accordingly, the ALJ's decision must be upheld.

## A. The ALJ did not err in failing to consider whether Mr. Page's impairments met listing 12.05C.

Page asserts that the ALJ failed to properly consider whether he met listing 12.05C at step three of the analysis. A claimant satisfies Listing 12.05C if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). Page argues that the ALJ should have considered his eligibility for this listing because (1) he was required to repeat the first grade, was in special education until he quit school in the ninth grade, and struggled with drug and alcohol abuse as a young teen, (2) he was tested with the Wechsler Adult

Intelligence Scale III, which resulted in a finding of a full scale IQ of 69, and (3) he has a serious physical impairment of mild to moderate degenerative disc disease.

The Commissioner argues that the ALJ was not required to discuss listing 12.05C at step three because the ALJ determined Page's intellectual limitations were not a severe limitation at step two. At step two, the ALJ assesses whether the claimant has a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. SSR 85-28. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, which include the ability to understand, remember, and carry out simple instructions, the ability to make simple work-related decisions, the ability to respond appropriately to supervisors and coworkers, and the ability to deal with changes in a routine work setting. *See* 20 C.F.R. § 404.1522. If an impairment is not "severe," it need not be considered at step three.

The ALJ's determination that Page's intellectual limitations were not a severe impairment is supported by substantial evidence in the record. The ALJ found that the record as a whole showed that Page's intellectual limitations were no more than moderate. AR 16. In support of this, the ALJ referred to Page's strong work history

for several years performing semi-skilled work—Page worked for nearly ten years as a semi-skilled truck driver. The ALJ's line of reasoning is also consistent with the opinion of Dr. Severinghaus,[2] who stated that "[w]ith his work history and adaptive skills, [Page's] IQ might be best considered in the Borderline range." AR 432. The ALJ further observed that Page "completes a range of tasks/activities requiring concentration including household chores, driving, shopping, watching television, and following the course of medical appointments/treatment." AR 17–18. This too supports the ALJ's determination that Page's intellectual impairment was not "severe" within the meaning of the regulations.

Page is correct that the ALJ's determination was not well articulated. However, "[e]ven when an agency explains its decision with 'less than ideal clarity' [the court] must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). The ALJ's discussion at step two makes clear that the ALJ did not find the limitations to Page's adaptive functioning sufficient to constitute a severe impairment.

---

[2] The ALJ did not consider the opinion of Dr. Severinghaus because it was issued before the relevant date. However, Page urges that the ALJ should have considered his opinion, as discussed below.

**B.** **The ALJ did not err in finding Page's symptom testimony not credible.**

Page asserts that the ALJ erred by discrediting his symptom testimony. The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Molina, 674 F.3d at 1112. Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity,

and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Page alleged that he suffered from "nerve pain" including back and neck pain and pain radiating into his extremities. At the hearing, Page testified that his pain and symptoms limit his ability to perform daily activities. He asserted that he is able to stand or walk for only five or ten minutes at a time and that he has to lie down for 20 minutes to an hour each day. AR 75. He rated the severity of his pain at an 8 or higher on a scale of 1–10 and sometimes at a "15." AR 74. Page described having trouble with postural activities such as stooping/bending over or squatting as well as lifting/carrying objects. AR 75–76. He testified that he has issues with concentration because of pain and that he cannot watch television for longer than 15 minutes without having to get up and walk around to alleviate the pain. AR 78. He indicated that his conditions limit his daily living activities and testified that he does not do much around the house except light chores, driving to the store, and shopping. AR 79–80.

The ALJ found that Page's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19. Nonetheless, the ALJ still provided specific, clear, and convincing reasons to discount Page's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

First, the ALJ found that the record showed Page had a history of exaggerating the severity of his symptoms. For example, Dr. Shanks observed that Page had a "significant overreaction to even the lightest palpation" and exhibited a larger-than-reported range of motion when his attention was diverted elsewhere. AR 540. Likewise, Dr. Bender reported that Mr. Page displayed "exaggerated" and "hypersensitive" reactions on exams and presented with "shaking spells that seem[ed] somewhat volitional." AR 665. Neurosurgeon Cynthia Hahn, M.D. also observed that Page was "quite demonstrative" and jumped visibly in an evaluation. AR 622. The ALJ therefore reasonably discounted Page's symptom reporting based on the evidence in the record indicating his disproportionate pain reporting.

The ALJ also discounted Page's testimony because he failed to follow treatment recommendations. AR 22, 24. "The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. The ALJ noted that Page declined to allow nerve conduction testing, he was noncompliant with his recommended home physical therapy exercises, and he refused a recommended psychiatric consult. AR 24.

Finally, the ALJ observed that Page made inconsistent statements about his activity level. AR 24–25. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict

the claimant's other testimony or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Page reported to his medical providers that he was able to exercise 60 minutes per day and walked for an hour per day. AR 613. He reported his functional activity level as 10, 8, and 7 out of 10, with 10 being the highest level of activity. AR 690, 693, 699. He also reported that he could mow the lawn and perform some household chores. AR 778. However, at the hearing, Page testified that he could only walk two blocks and that he could stand for about 5 to 10 minutes. AR 75. He also reported that it was hard for him to walk. AR 76. The ALJ's decision to discount Page's reports based on these inconsistencies was therefore reasonable.

.For these reasons, the ALJ's credibility finding is based on specific, clear, and convincing reasons, which are supported by substantial evidence. The ALJ therefore did not err in discounting Page's symptom testimony.

**C.     The ALJ did not err in assigning weight to the medical opinion evidence.**

Page argues that the ALJ failed to adequately consider the opinions of several treating or examining medical providers Dr. Berdine Bender, MD, and Debra Brown, PhD. ECF No. 12 at 14–17. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)."

ORDER - 13

*Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d 821, 830–31).

**1.    The ALJ properly rejected the opinion of Dr. Bender.**

Page appears to assert that the ALJ improperly failed to consider the opinion of his treating physician, Dr. Bender. ECF No. 12 at 14. The ALJ conducted the hearing on August 6, 2015, and rendered a decision that same day. AR 10. Dr.

Bender's letter to the Social Security Administration is dated August 18, 2015. Thus, this correspondence was not available to the ALJ for evaluation at the time the ALJ issued the opinion. The ALJ could not have erred in failing to address this testimony because it did not exist at the time the ALJ's decision.

Dr. Bender's opinion was considered by the Appeals Council. AR 2. The Appeals Council found that the evidence—in conjunction with the other evidence submitted—did not provide a basis to change the ALJ's decision. *Id.* "[W]hen a claimant submits evidence for the first time to the Appeals Council . . . the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012). Denial of remand is appropriate "notwithstanding the existence of new evidence only when there would be substantial evidence supporting the ALJ's denial of disability benefits even if the new evidence were credited and interpreted as argued by the claimant." *Gardner v. Berryhill*, 856 F.3d 652, 658 (9th Cir. 2017).

Even when Dr. Bender's opinion is considered, the ALJ's opinion is still supported by substantial evidence. Dr. Bender's letter to the Social Security Administration states in its entirety: "Mr. Patrick Paige [*sic*] is a patient in my internal medicine office. At this time he is completely disabled and would not be able to function at even sedentary work levels. Unfortunately he has a poor

prognosis for recovery." AR 824. As the appeals council noted, the letter appears to pertain to Page's condition on August 18, 2015, which is not relevant to the Appeals Council's review of the ALJ's decision. Further, even if the correspondence were relevant, it is not entitled to any weight because it pertains to only matters reserved for the Commissioner's determination. *See* 20 C.F.R. § 404.1527(e)(1), (3); *id.* § 416.1527(e)(1), (3) (the issue of whether a claimant is able to work is reserved to the Commissioner); SSR 96-5p, 1996 WL 374183, at *2 (Jul. 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

### 2. The ALJ properly rejected the opinion of Debra Brown, PhD.

Page next argues that the ALJ erred in assigning the medical opinion evidence of Dr. Brown little weight. ECF No. 12 at 15. Dr. Brown evaluated Page in January 2013 and found that Page had marked to severe limitations in several occupational function areas. Dr. Brown's opinion is contradicted by the opinions of Anita Anderson, PhD, and Michael Brown, PhD, who found that Page was capable of limited work with certain cognitive limitations. Accordingly, the ALJ needed to identify specific and legitimate reasons supported by substantial evidence to discredit Dr. Brown's opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ noted that Dr. Brown's opinion was not supported by objective evidence. AR 27. On examination, Dr. Brown observed no indications of a formal

thought disorder of psychotic process. AR 529. She observed that Page's speech was logical and that he was cooperative and displayed an appropriate affect. AR 532. She noted that Page had no impairments in perception, memory, insight or judgment. AR 532. Dr. Brown indicated some impairment in Page's concentration, reasoning and fund of knowledge. AR 533. The ALJ reasonably concluded that these findings were inconsistent with the degree of severity indicated in the check-box portion of the opinion.

The ALJ next noted that, in the absence of objective evidence, Dr. Brown's conclusions were based on Page's self-reporting. AR 27. Although the examination notes do not make this clear, the ALJ inferred as much based on the notable discrepancy between the examination notes and the disabilities indicated on the check-box portion of the opinion. An ALJ may reject even a treating physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041.

The ALJ also noted that the check-box portion of the opinion was inconsistent with the Global Assessment of Functioning (GAF) rating of 51 that Dr. Brown had assigned to Page. Dr. Brown attributed Page's GAF rating of 51 to "moderate impairment in social, educational, and occupational functioning." AR 531. The ALJ correctly concluded that this assessment is inconsistent with Dr.

Brown's later indication that Page suffered from marked to severe occupational limitations. AR 27.

Finally, the ALJ discounted Dr. Brown's opinion because it was not consistent with Page's counseling treatment notes, which reflected only moderate depression and anxiety. AR 27. Further, the ALJ noted that Page's records indicated generally normal psychiatric screenings without indication of debilitating symptoms of significant cognitive complaints. *See* AR 548, 632. Page argues that Dr. Brown's opinion should be given more weight than the routine screenings performed by Page's other physicians because Dr. Brown is a mental health specialist. ECF No. 12 at 17. However, an ALJ is allowed to consider an opinion against the weight of the record as a whole. *Cf. Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (noting that an ALJ may reject medical testimony based on specific reasons supported by the record as a whole).

### 3. The ALJ properly discounted the opinions of other evaluators predating the relevant period.

Page argues that the ALJ "declared a wholesale rejection of the opinions . . . that predate the relevant period." While evidence concerning ailments outside the relevant time period can "support or elucidate the severity of a condition," *Pyland v. Apfel*, 149 F.3d 873, 878 (8th Cir. 1998), there is no requirement that the ALJ consider evidence from outside the relevant period, *see Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

ORDER - 18

Further, Page has not shown how an analysis of these opinions would change the outcome. Thus, even if the ALJ erred in failing to consider the opinions, Page has not met his burden to show harmful error.

**D.      Because the ALJ acted properly, the Court does not address Page's harmful error argument.**

Page argues that the ALJ's alleged errs caused "ancillary errors" in the step-five assessment of his ability to work because the testimony from the vocational expert was based on an improper hypothetical. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Page's argument assumes that the ALJ erred in evaluating his impairments, the medical evidence, and his symptom testimony. For reasons discussed throughout this decision, the ALJ's hypotheticals to the vocational expert were based on evidence and reasonably reflected Page's limitations. Thus, the ALJ's findings are supported by substantial evidence and are legally sufficient.

## VI.      CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.**      Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

1     **2.**     The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is

2         **GRANTED**.

3     **3.**     **JUDGMENT** is to be entered in the Defendant's favor.

4     **4.**     The case shall be **CLOSED**.

5     **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

6 provide copies to all counsel.

7     **DATED** this 28th day of March 2018.

8

9         _____

        SALVADOR MENDOZA, JR.

10        United States District Judge

11

12

13

14

15

16

17

18

19

20

ORDER **-** 20